IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| KEVIN BRADLEY, | CASE NO. 1:21-cv-1274 |
| Petitioner, | DISTRICT JUDGE JEFFREY J. HELMICK |
| vs. | |
| WARDEN NEIL TURNER, | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Respondent. | |

**REPORT &
RECOMMENDATION**

Pro se Petitioner Kevin Bradley filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1. Bradley is in custody at the North Central Correctional Complex due to a journal entry of sentence in the case *State v. Bradley*, Cuyahoga County Court of Common Pleas, Case No. CR-19-636657-A. This matter has been referred to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Petition be denied.

**Summary of facts**

In habeas corpus proceedings brought by a person under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals for the Eighth Appellate District summarized the facts underlying Bradley's conviction as follows:

> {¶ 3} Bradley and Beniqua Cromity, who have what Beniqua described as a "toxic" relationship, share a child together. On April 3, 2018, Beniqua went to Bradley's apartment to pick up their son. She got into a fight with Bradley and members of his family, during which Bradley choked her. Later that night, Beniqua, along with some of her female friends and family, went back to Bradley's apartment and got into another fight.

> {¶ 4} The next day, April 4, 2018, Beniqua, her brother Benny, her brother Tameris, and other friends and family members ("the Cromitys") went back to Bradley's neighborhood in two cars to fight again. The Cromitys parked on a street behind Bradley's apartment complex, and Bradley's cousin tried to run the Cromitys over with a van. While the Cromitys were focused on this van, Bradley, his brother Terrance, and an unidentified person began shooting from a small field behind where the Cromitys were standing. Both of Beniqua's brothers were shot. Benny died from a gunshot wound to the chest, but Tameris survived.

*State v. Bradley*, No. 108983, 2020 WL 3467722, at *1 (Ohio Ct. App. June 5, 2020).

**Procedural background**

*Trial court proceedings*

In February 2019, the Cuyahoga County Grand Jury issued an indictment charging Bradley with one count of aggravated murder, one count of murder, six counts of felonious assault, and two counts of discharging a firearm on or near prohibited premises. Doc. 9-1, at 3–8 (Exhibit 1). All counts

had firearm specifications. *Id*. Bradley, through counsel, pleaded not guilty. *Id*. at 9.

The case proceeded to trial, and the jury found Bradley not guilty of aggravated murder and murder. Doc. 9-1, at 10 (Exhibit 3). The jury found Bradley guilty on the six felonious assault counts and firearm specifications, and guilty on two lesser counts of discharging a firearm on or near prohibited premises. *Id*. At sentencing in April 2019, the trial court merged the applicable counts and firearm specifications and sentenced Bradley to a total of 11 years in prison. *Id*. at 12–13 (Exhibit 4).

*Direct appeal*

In September 2019, Bradley, through new counsel, filed an untimely appeal to the Ohio court of appeals and a motion for a delayed appeal. Doc. 9-1, at 14–24 (Exhibits 5, 6). Counsel explained that the trial court did not notify him that he was appointed as Bradley's appellate counsel. *Id*. at 24. The court granted Bradley's motion for delayed appeal. *Id*. at 28 (Exhibit 7). In his brief, Bradley raised the following assignments of error:

> 1. The jury determination in lower court in regards to counts three, five, six, eight, nine, ten and any gun specifications was against the manifest weight of evidence.

> 2. There was not sufficient evidence presented to the trier or fact in the lower court proceeding to convict

3

> the Appellant of counts three, five, six, eight, nine,
> ten or any gun specifications.[1]

Doc. 9-1, at 32 (Exhibit 8). In June 2020, the Ohio court of appeals affirmed the trial court's judgment. *Id*. at 63–78 (Exhibit 10).

In October 2020, Bradley, pro se, filed an untimely notice of appeal with the Ohio Supreme Court and a motion for delayed appeal, citing institutional delays due to the Covid-19 pandemic. Doc. 9-1, at 79–86 (Exhibits 11, 12). The Ohio Supreme Court granted Bradley's motion. *Id*. at 105 (Exhibit 13). In his memorandum in support of jurisdiction, Bradley set forth the following propositions of law:

> 1. As a matter of law a verdict in which does not meet the elements of the crime itself cannot be upheld.
>
> 2. When the circumstantial and direct evidence does not weigh in favor of a conviction a reviewing court must grant a new trial.

Doc. 9-1, at 107 (Exhibit 14). In March 2021, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Bradley's appeal. *Id*. at 123 (Exhibit 15).

*Ohio Appellate Rule 26(B) Application to reopen*

Meanwhile, in November 2020, Bradley filed in the Ohio court of appeals an application under Ohio Appellate Rule 26(B) to reopen his direct appeal. Doc. 9-1, at 124 (Exhibit 16). In his application, Bradley argued that appellate

---

[1] Bradley's grounds for relief are reproduced as written and have not been edited.

4

counsel provided ineffective assistance for not raising the following assignment of error on appeal:

> The trial courts imposition of a eleven year prison term is contrary to Ohio law and is clearly and convincingly not supported by the trial record.

Doc. 9-1, at 130. In December 2020, the Ohio court of appeals denied Bradley's application. *Id*. at 149–53 (Exhibit 18).

In January 2021, Bradley appealed to the Ohio Supreme Court. Doc. 9-1, at 154 (Exhibit 19). In his memorandum in support of jurisdiction, Bradley set forth the following propositions of law:

> 1. When Appellate counsel fails to provide a relevant, competent, and justly effective argument on appellant's behalf, when such exists, counsel is ineffective, thus depriving appellant of his U.S. and/or Ohio constitutional guarantee to the effective assistance of counsel.
>
> 2. Appellant's eleven year prison term is contrary to Ohio law and/or is clearly and convincingly not supported by law and or the record.

Doc. 9-1, at 157 (Exhibit 20). In April 2021, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Bradley's appeal. *Id*. at 201 (Exhibit 21).

*Federal habeas corpus petition*

In July 2021, Bradley filed a federal habeas corpus petition under 28 U.S.C. § 2254. Doc. 1. He raised the following grounds for relief:

> **Ground one**: Petitioner was deprived the guarantee of effective assistance of appellate counsel on his first appeal as of right.

*Supporting facts*: Petitioner was deprived effective counsel as guaranteed to him through the United States Supreme Court within Evitts v. Lucey, 469 U.S. 387, and the United States Constitution, when counsel failed to provide an argument on behalf of the two assignment's of error counsel did raise. Counsel raised two assignments of error and then failed to put a written argument under the errors raised for whatever reason, thus petitioner was not even given a chance for his case to be heard in the first place, as of right. Further, counsel failed to read the transcripts, contact the trial attorneys, or contact petitioner nor file the appeal timely as ordered by the trial court. The court of appeals still heard the case without any arguments on petitioner's behalf, citation to the record, identification to any record—transcript—exhibit, etc, depriving petitioner of his full and fair right to a direct appeal as of right.

**Ground two**: Petitioner's conviction is, as a matter of law, insufficient and does not meet the requirement of beyond a reasonable doubt.

*Supporting facts*: Petitioner's conviction's are against the sufficiency of the evidence and do not meet the United States Supreme Courts requirement of convicting a defendant based upon "beyond a reasonable doubt" as provided in—In Re. Winship, 397 U.S. 358. Petitioner's convictions, as stated by the Ohio Court of Appeals, rest solely upon circumstantial evidence, however this circumstantial evidence in total does not sufficiently sustain a conviction beyond a reasonable doubt. The State relies upon evidence obtained from a separate incident in which was deemed to be legal on petitioner's part, the fact this legal event occurred is the basis for finding petitioner guilty in this instant matter. There is no relevance between the two events and no physical, direct, and/or circumstantial evidence in this matter that beyond a reasonable doubt would legally allow a trier of fact to find petitioner guilty. Moreover, the jury's additional findings in which found the State of Ohio failed to

6

prove beyond a reasonable doubt the petitioner caused any harm to an individual, is conflicting with the conviction.

**Ground three**: Petitioner's eleven year prison term is excessive, harsh, contrary to the jury's additional findings, not supported by the record, and contrary to law.

*Supporting facts*: Petitioner's eleven year prison term is harsh and excessive based upon the record of this matter, inter aliea, the jury made additional findings that the State of Ohio failed to prove beyond a reasonable doubt the petitioner caused any harm during the commision of the offenses, which is in conflict with the convictions themselves and the serious sentence petitioner received. Petitioner was a law-abiding citizen, a security officer, licensed to carry a firearm, and a first time offender, the courts sentence is not proportionate to the mitigating factors in petitioners favor and is wholly an abuse of the trial courts discretion. Moreover, the trial courts sentence is contrary to the Ohio sentencing guidelines, as stated in R.C. 2929.11 and 2929.12.

Doc. 1, at 5–9. The Warden filed a Return of Writ, Doc. 9, and Bradley filed a Traverse, Doc. 13.

### Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, 110 Stat. 1214, petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr*., 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a

constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when state court remedies are no longer available, procedural default rather than exhaustion applies. *Id.*

*Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts") (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). And a habeas petitioner must present both the factual and legal underpinnings of the claims to the state courts. *McMeans v.*

*Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must present the claims to the state courts as federal constitutional issues and not just as issues arising under state law. *See, e.g., Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987); *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).

*Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: whether (1) there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) the state court enforced the procedural rule; (3) the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

9

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams*, 460 F.3d at 806.

To overcome a procedural bar, petitioners must show cause for the default and actual prejudice that resulted from the alleged violation of federal law that forms the basis of their challenge, or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

*Merits review*

To obtain habeas relief under 28 U.S.C. § 2254, a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). 28 U.S.C. § 2254(d).

Under the *contrary to* clause, a federal habeas court may grant a writ if the state court "arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under the *unreasonable application* clause, a federal habeas court may grant the writ "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, and legal principles and standards flowing from Supreme Court precedent. *Id.* at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted *contrary to*, or *unreasonably applied*, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in

11

which a state court unreasonably applies this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an *unreasonable application* of law, the court uses an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Discussion**

*1.    A portion of Ground one fails on the merits and the remainder is procedurally defaulted*

In Ground one, Bradley argues that appellate counsel was ineffective for "fail[ing] to provide an argument on behalf of the two assignments of error counsel did raise," causing Bradley to lose his "chance for his case to be heard in the first place, as of right." Doc. 1, at 5. Bradley alleges that counsel failed to read the trial transcripts, contact Bradley or Bradley's trial attorneys, and to timely appeal. *Id.*

The Warden liberally construed Ground one as also alleging that appellate counsel was ineffective for not raising a claim challenging Bradley's sentence. Doc. 9, at 10. The Warden argues that Bradley's ineffective assistance of appellate counsel claim for failing to challenge Bradley's sentence fails on the merits and the claim challenging the manner in which counsel handled Bradley's appeal is procedurally defaulted. *Id.* at 10–12.

The standard in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to ineffective assistance of appellate counsel claims. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). A petitioner must show that counsel's assistance was objectively unreasonable and a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

### 1.1   *Appellate counsel's failure to challenge Bradley's sentence*

To the extent the Court liberally construes Ground one as alleging a claim that appellate counsel was ineffective for failing to challenge Bradley's sentence on appeal, the claim fails on the merits. The Ohio court of appeals considered this claim as follows:

> *I. Standard of Review Applicable to App.R. 26(B)*
> *Application for Reopening*
>
> {¶ 2} In order to establish a claim of ineffective

assistance of appellate counsel, Bradley is required to establish that the performance of his appellate counsel was deficient and the deficiency resulted in prejudice. *Strickland v. Washington*, 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), *cert. denied*, 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 767 (1990).

{¶ 3} In *Strickland*, the United States Supreme Court held that a court's scrutiny of an attorney's work must be highly deferential. The court further stated that it is all too tempting for a defendant to second-guess his attorney after conviction and that it would be too easy for a court to conclude that a specific act or omission was deficient, especially when examining the matter in hindsight. Thus, a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*.

{¶ 4} Moreover, even if Bradley establishes that an error by his appellate counsel was professionally unreasonable, he must further establish that he was prejudiced; but for the unreasonable error there exists a reasonable probability that the results of his appeal would have been different. Reasonable probability, with regard to an application for reopening, is defined as a probability sufficient to undermine confidence in the outcome of the appeal. *State v. May*, 8th Dist. Cuyahoga No. 97354, 2012-Ohio-5504.

## II. Single Proposed Assignments of Error

{¶ 5} Bradley's sole proposed assignment of error is that:

> The trial court's imposition of an eleven year prison term is contrary to Ohio

14

law and is clearly not supported by the trial record.

{¶ 6} Bradley, through his sole proposed assignment of error, argues that appellate counsel failed to argue on appeal the claim that the trial court's sentence of eleven years is contrary to law and unsupported by the record. On April 4, 2018, the trial court imposed a sentence of incarceration upon Bradley and held that:

> The court considered all required factors of the law. The court finds that prison is consistent with the purpose of R.C. 2929.11. The court imposes a prison sentence at the Lorain Correctional Institution of 11 year(s). In each of counts 6, 8, 9 and 10, the one year and three year firearm specs merge for purpose of sentencing. The state elects to sentence on the three year firearm spec in each of counts 6, 8, 9 and 10. The parties stipulate that counts 5 and 6 merge for purpose of sentencing. The state elects to sentence on count 6. (Fel-2, three year firearm spec). The parties stipulate that counts 3 and 4 merge and that counts 6 and 7 merge for purpose of sentencing. The state elects to sentence on Count 3 (Fel-2) and Count 6 (Fel-2, three year firearm spec). The parties stipulate that at a minimum, 2 of the three year firearm specs must run consecutively. R.C. 2929.14(b)(1)(g). Count 3, Fel-2: 5 years count 6, Fel-2: 3 year mandatory firearm specs to be served prior to and consecutive with 5 years on underlying offense. Count 8, Fel-2: 3 year mandatory firearm specs to be served prior to and consecutive with 5 years on underlying offense. Count 9, Fel-2: 3 year mandatory firearm specs to be served prior to and consecutive with 5

years on underlying offense. Count 10, Fel-2: 3 year mandatory firearm specs to be served prior to and consecutive with 5 years on underlying offense. 3 year firearm specs to be served concurrently in counts 8, 9 and 10 but consecutively to 3 year firearm spec on count 6. Defendant serving an aggregate 11 year sentence. 6 years are mandatory with no judicial release or reduction of sentence.

{¶ 7} The transcript of the sentencing hearing clearly demonstrates that the trial court considered the factors enumerated within R.C. 2929.11 (purposes and principles of felony sentencing) and 2929.12 (sentencing factors), and the trial court did not rely upon false or inaccurate information. In addition, the sentence imposed by the trial court fell within the applicable statutory ranges, as found in R.C. 2929.14(A)(2)(b)—2, 3, 4, 5, 6, 7, and 8 years, and applicable to the offenses of felonious assault under R.C. 2903.11(A)(1), felonious assault under R.C. 2903.11(A)(2), and discharge of a firearm upon or over a public road or highway under R.C. 2923.162(A)(3), all felonies of the second degree. We find no error associated with the sentence imposed by the trial court. *State v. Jones*, 8th Dist. Cuyahoga No. 108050, 2019-Ohio-5237; *State v. Tidmore*, 8th Dist. Cuyahoga No. 107369, 2019-Ohio-1529; *State v. Horner*, 8th Dist. Cuyahoga No. 103719, 2016-Ohio-7608; *State v. East*, 8th Dist. Cuyahoga No. 102442, 2015-Ohio-4375.

{¶ 8} It must be also noted that the imposition of two consecutive three-year firearm specifications (R.C. 2941.145(A)) was mandatory as required by R.C. 2929.14(B)(1)(g), and did not constitute any error on the part of the trial court. *State v. Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, *State v. Howard*, 2d Dist. Montgomery No. 28314, 2020-Ohio-3819; *State v. Rouse*, 9th Dist. Summit No. 28301, 2018-Ohio-3266.

16

*III. Conclusion*

> {¶ 9} Bradley was properly sentenced by the trial court, and we find no prejudice under his sole proposed assignment of error.

*State v. Bradley*, No. 108983, 2020 WL 7252990, at *1–2 (Ohio Ct. App. Dec. 9, 2020).

The Ohio court of appeals applied the two-part *Strickland* standard to Bradley's ineffective assistance of appellate counsel claim and found that Bradley failed to satisfy the prejudice prong. *Id*. Because Bradley could not show prejudice, his claim failed. *Id*.; *see Strickland*, 466 U.S. at 687 (a defendant must meet both prongs to prevail on an ineffective assistance of counsel claim). Appellate counsel is not obligated to advance every possible argument on appeal, *Jones v. Barnes*, 463 U.S. 745, 750–54 (1983), nor is counsel ineffective for failing to raise an issue that lacks merit, *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ("[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit").

Bradley complains that he received consecutive sentences. Doc. 13, at 20. But as the Ohio court of appeals observed, six years of Bradley's eleven-year sentence were for firearm specifications and were mandatorily imposed as consecutive sentences under Ohio law. *Bradley*, 2020 WL 7252990, at *2. Bradley's five-year sentences on each of the felonious assault convictions ran concurrently and were under the statutory maximum sentence of eight years. *Id*.

17

Bradley argues that the jury's verdict finding "serious physical harm" for felonious assault against Benny and Tameris was inconsistent with the jury's verdict finding no "serious physical harm" against Benny and Tameris for discharging a firearm upon or over a public road or highway. Doc. 13, at 20, 31–32. But those verdicts were not inconsistent. Tameris testified that he and his brother Benny were shot as they stood on the sidewalk, Doc. 10-2, at 90, and that the shooting began from the field before moving into the street, *id*. at 94; *see also id*. at 58–59; Doc. 10-3, at 18. So the jury could have found that the bullets that struck Tameris and Benny did not travel from or over the road. Moreover, "the Ohio Supreme Court has continually maintained [that] … '[c]onsistency in the verdict is not necessary.'" *State v. Amey*, 120 N.E.3d 503, 509 (Ohio Ct. App. 2018)). In any event, the two verdicts that Bradley complains of—for discharging a firearm on or near prohibited premises—each merged into a felonious assault charge and the state elected to proceed to sentence on the felonious assault charges. *Bradley*, 2020 WL 7252990, at *1. So Bradley's challenge to his sentence on that basis fails. Bradley hasn't shown "a reasonable probability that, but for counsel's performance, the result of [his appeal] would have been different." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004). And he cannot overcome the "doubly deferential" standard of review by showing that the Ohio court of appeals' application of *Strickland* was unreasonable. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

To the extent Bradley complains that Ohio courts of appeals "have erroneously evolved the standard of reviewing an App.R.26(B) application," Doc. 13, at 3, such a claim challenges state law and is not cognizable. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Shine-Johnson v. Warden, Belmont Corr. Inst.*, No. 2:20-CV-1873, 2023 WL 2364663, at *4 (S.D. Ohio Mar. 6, 2023) (Ohio courts' approach to evaluating Rule 26(B) applications to reopen is a state law issue not cognizable on federal habeas review).

Bradley's claim fails on the merits.

### 1.2    Appellate counsel's handling of Bradley's appeal

Bradley's complaints about how counsel handled Bradley's appeal are procedurally defaulted because Bradley didn't raise those complaints in his Rule 26(B) application to reopen as a separate reason appellate counsel was ineffective. Doc. 9-1, at 130–35. Rather, Bradley only alleged that counsel was ineffective for not challenging on appeal Bradley's sentence. *Id*. A claim is only considered *fairly presented* when the petitioner asserts both the factual and legal bases for that claim to the state courts. *McMeans*, 228 F.3d at 681; *see Wong v. Money*, 142 F.3d 313, 321–22 (6th Cir. 1998) (ineffective assistance of counsel claim based on different reasons than those alleged in state court is procedurally defaulted).

19

Although Bradley raised a claim challenging appellate counsel's handling of Bradley's case when Bradley appealed to the Ohio Supreme Court the Ohio court of appeals' ruling on his Rule 26(B) application, *id.* at 157, 167–72, doing so did not preserve the issue for federal habeas review. *See Castille v. Peoples*, 489 U.S. 346, 349–51 (1989) (raising a claim for the first time to the highest state court on discretionary review is not "fair presentation" for exhausting a federal habeas claim); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."); *Casey v. Moore*, 386 F.3d 896, 916–18 (9th Cir. 2004) (same, collecting cases); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition.").

In his traverse, Bradley argues that he *did* raise his claim about counsel's handling of his appeal in his Rule 26(B) application. Doc. 13, at 5. He cites Ohio Appellate Rule 26(B)(2)(c), which requires a defendant to submit:

> One or more assignments of error or arguments in support of assignments of error that previously were not considered on the merits in the case by any appellate court or that were considered on an incomplete record because of appellate counsel's deficient representation;

and Ohio Appellate Rule 26(B)(2)(d), which requires:

> A sworn statement of the basis for the claim that appellate counsel's representation was deficient with respect to the assignments of error or arguments raised pursuant to division (B)(2)(c) of this rule and the manner in which the deficiency prejudicially affected the outcome of the appeal, which may include citations to applicable authorities and references to the record[.]

Doc. 13, at 5. Bradley concedes that he only listed the sentencing issue as an assignment of error, but points out that, in his affidavit attached to his application, he recited counsel's alleged deficiencies in handling Bradley's appeal. *Id*. at 5–6; *see* Doc. 9-1, at 130 (Bradley's assignment of error), 138–41 (Bradley's affidavit). But under Ohio Appellate Rule 26(B)(2)(d), the affidavit must state why counsel's performance was deficient *with respect to the assignments of error or arguments raised pursuant to division (B)(2)(c)*. Rule 26(B)(2)(d) does not permit a defendant to raise new assignments of error in an affidavit.

Moreover, Ohio Appellate Rule 26(B)(2)(c) permits a defendant to raise an assignment of error that the appellate court heard on direct appeal, but that, due to counsel's deficient representation, was considered by the court on an incomplete record. That is the type of claim that Bradley attempts to raise now. In other words, Bradley could have, but didn't, list as an assignment of error a claim that appellate counsel's handling of his appeal was deficient under Ohio Appellate Rule 26(B). So Bradley's claim is procedurally defaulted. *See State v. Fryerson*, No. 91960, 2010 WL 1712016, at *1 (Ohio Ct. App. April 26, 2010) ("This court has previously held that the failure to clearly state

21

proposed assignments of error [under Ohio Appellate Rule 26(B)(2)(c)] is 'fatally defective.'"). Bradley doesn't allege cause or prejudice to excuse his procedural default or actual innocence to overcome that bar. Although Bradley argues legal insufficiency, Doc. 1, at 7; Doc. 13, at 39, "[a]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 615 (1998).

Even assuming that Bradley fairly presented this claim to the Ohio court of appeals in the affidavit portion of his Rule 26(B) application, Bradley's claim fails on the merits. Appellate counsel raised two assignments of error—Bradley's convictions on six counts and four firearm specifications were against the manifest weight of the evidence and not supported by the sufficiency of the evidence. Doc. 9-1, at 32. Bradley's assertion that counsel didn't provide any argument or cite the record, Doc. 1 at 5, is belied by appellate counsel's brief, which contains legal and factual arguments in support of the assignments of error and citations to the transcript.[2] *See* Doc. 9-1, at 34–40. While it is true that appellate counsel in the sufficiency claim referenced his arguments in the manifest weight claim, *id.* at 40, those two issues, while legally distinct, are often considered together. *See State v. Lee*, 814 N.E.2d 112, 115 (Ohio Ct. App.

---

[2]     Bradley states that counsel "set forth [the] standard of review case-law, the rest is blank as to the argument though." Doc. 13, at 16. To the contrary, counsel wove his arguments into his discussion of the relevant case law. Doc. 9-1, at 38–40.

2004) ("[A] determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.").

Bradley's complaint that appellate counsel filed an untimely appeal doesn't show that counsel was ineffective, because counsel told the Ohio court of appeals that he wasn't notified that the trial court appointed him as Bradley's appellate counsel. Doc. 9-1, at 24. Nor was Bradley prejudiced, because the Ohio court of appeals granted Bradley's motion to file a delayed appeal. *Id*. at 28. Bradley's disbelief that appellate counsel read in 16 days the "entire 699 pages" of transcript in Bradley's case notwithstanding, Doc. 13, at 15, Bradley doesn't show that appellate counsel didn't read the transcript. As noted, appellate counsel cited the transcript and summarized the testimony and facts presented at trial. Doc. 9-1, at 34–36. Bradley's reliance upon cases in which the Ohio court of appeals rejected arguments because they were not adequately briefed, Doc. 13, at 16–17, is irrelevant.[3] Here, the Ohio court of appeals evaluated Bradley's fully-briefed arguments. *Bradley*, 2020 WL 3467722, at *6–7.

Bradley's other arguments fare no better. He complains that appellate counsel didn't contact Bradley's trial counsel to discuss possible issues to appeal, Doc. 13, at 18, but doesn't cite legal authority stating that appellate

---

[3]     Bradley's assertion that Ohio courts regularly disregard issues that were improperly raised cuts against Bradley's assertion that he properly raised in his supporting affidavit under Ohio Appellate Rule 26(B)(2)(d) this claim as a separate assignment of error under Rule 26(B)(2)(c).

counsel is per se ineffective for not contacting trial counsel.[4] He doesn't state what, if anything, trial counsel would have suggested. Bradley belabors his point that his sufficiency and manifest weight arguments weren't presented to his satisfaction, *id*. at 18–19, but doesn't explain what, specifically, he believes was missing from those arguments. Bradley's complaint that appellate counsel didn't contact him before filing Bradley's appellate brief, *id*. at 19, while perhaps regrettable, was not per se deficient. And Bradley doesn't explain how he was prejudiced by counsel not contacting him first, beyond not challenging Bradley's sentence, *id*., at 20, which I've discussed above. In fact, despite counsel's alleged ineffectiveness, Bradley submits that "the Court of Appeals still heard the case." Doc. 1, at 5. So even if this Court considers the merits of Bradley's claim criticizing appellate counsel's handling of Bradley's appeal, Bradley hasn't shown that appellate counsel was ineffective or that Bradley was prejudiced as a result.

### 2. *Ground two fails on the merits*

In Ground two, Bradley argues that his convictions were not supported by sufficient evidence. Doc. 1, at 7. When reviewing a claim that a petitioner's conviction is not supported by sufficient evidence, the court asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any*

---

[4] This Court previously denied Bradley's motion to expand the record without prejudice subject to re-evaluation upon full petition review. Doc. 14. Having reviewed Bradley's full petition and motion to expand the record, I agree that Bradley is not entitled to expand the record.

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The court defers to the trier-of-fact's determination. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). The standard is not whether the trier-of-fact made the correct guilt or innocence determination, but whether it made a rational decision to convict or acquit. *Herrera v. Collins*, 506 U.S. 390, 402 (1993). The court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the [fact-finder]." *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

On federal habeas review, an additional layer of deference applies. *Brown*, 567 F.3d at 205; *see Coleman v. Johnson*, 566 U.S. 650, 651 (2012). So even if this Court were to conclude that a rational trier-of-fact could not have found Bradley guilty beyond a reasonable doubt, the Court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205; *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

25

The Ohio court of appeals considered Bradley's claim as follows:

{¶ 6} Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the prosecution's evidence is insufficient to sustain a conviction for the offense. Crim.R. 29(A) and sufficiency of the evidence require the same analysis. *State v. Taylor*, 8th Dist. Cuyahoga No. 100315, 2014-Ohio-3134. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Driggins*, 8th Dist. Cuyahoga No. 98073, 2012-Ohio-5287, ¶ 101, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 7} The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Vickers, 8th Dist. Cuyahoga No. 97365, 2013-Ohio-1337, citing State v. Jenks, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

\*\*\*

*Felonious Assault*

{¶ 10} Pursuant to R.C. 2903.11(A)(1), "No person shall knowingly * * * [c]ause serious physical harm to another." Pursuant to R.C. 2903.11(A)(2), "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon * * *.

*Complicity*

{¶ 11} Pursuant to R.C. 2923.03(A)(2), "No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." The Ohio Supreme Court further established that, to prove complicity, "the evidence must show that the defendant supported, assisted, encourage,

26

cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." *State v. Johnson*, 93 Ohio St.3d 240, 245-246, 754 N.E.2d 796 (2001). Furthermore, "the identity of the principal is not an element that the state must prove to establish the offense of complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2)." *In re T.K.*, 109 Ohio St.3d 512, 2006-Ohio-3056, 849 N.E.2d 286, ¶ 13.

*Trial Testimony*

{¶ 12} In the case at hand, the following evidence was presented at Bradley's trial.

{¶ 13} Beniqua testified that Bradley is the father of her son, who was born on February 9, 2016. According to Beniqua, her relationship with Bradley "was okay in the first couple years. When we moved [in] together that's when everything got crazy, toxic." On April 3, 2018, when Beniqua was picking up their son from Bradley's apartment on Wade Park, she got into an argument with Bradley's sister. Bradley then choked Beniqua and threw her into her car. That night, Beniqua and some of her female friends and family went back to Bradley's apartment "to fight." According to Beniqua, this was her idea, and the women got into a fist-fight in front of the apartment.

{¶ 14} The next day, the Cromitys took two cars and drove to Bradley's. After they parked on the street behind Bradley's apartment complex, Bradley's cousin Brittany drove a white van toward the group. Beniqua testified as follows about what happened next:

> Her lights on the car was off and she was blocking us off the street. First she tried to—at first she tried to run us over so we had got on the sidewalk and then got back in the street and she like blocked us off and we was turning—

27

our backs was turned but we was facing her, her van, to see if—we was seeing if people was going to get out the car. Our back was turned and my brother turned around and said, There they go, and then they just started shooting.

{¶ 15} According to Beniqua, her group was focused on the van, but behind them was a small field that led to Bradley's apartment complex. The shots were fired from this field. Beniqua, Tameris, and their cousin Moesha hid behind Beniqua's car. Benny jumped in front of the car and tried to run. Both Benny and Tameris were shot. A bullet also went through the windshield of Beniqua's car. Asked who was shooting the guns, Beniqua testified, "Kevin Bradley, his brother Terrance Bradley, and there was a third person, but his face was covered. * * * I saw Kevin Bradley in the middle. He stood out the most because he was the biggest. I remember his jacket that he had on that he always wear. It was a blue windbreaker jacket." The Cromitys got in Beniqua's car, and she drove them to the Cleveland Clinic. According to Beniqua, Benny died in the back seat of her car on the way to the hospital.

{¶ 16} On cross-examination, Beniqua testified that she did not identify the shooters to the police when she was questioned on the night of incident. At the time, she told the police it was too dark to see. However, during the trial, Beniqua testified that "I didn't want to give no names because I was so mad, I didn't know my brother had passed away yet, and I wanted to get revenge. * * * I don't know. I wasn't thinking in the moment. I was just so mad that night."

{¶ 17} Tameris testified about going to Bradley's apartment complex on the night of April 4, 2018: "I don't know what like the altercation was the day before the 4th but I know on the 4th I was told that they wanted to fight. We was supposed to meet them down on Wade Park. We get down there. Wasn't no fight and we got shot." Asked what he was expecting,

28

Tameris answered, "Fistfight. Just like a one-on-one or them two fighting and it's going to be us two fighting. Like that. No weapons, nothing, just straight hands and fists." Tameris continued:

> We got—as soon as we got there we got out the car. I guess they seen us where we was—wherever we parked at, they seen us and this van came from behind us. They pulled up, they pulled back, pulled up, pulled back. Then the last time they pulled all the way back to the end of the street and my brother Benny turned around. I don't know what made him turn around or nothing. He turned around and he was like, they right there. * * * They pulled to the back of the street and they stopped. I don't know if they turned the car off or not. Probably about five, seven minutes later, that's when gunshots started going off and we got shot. * * * I was standing on the sidewalk and [Benny] was behind me.

{¶ 18} Tameris testified that there was a "cut" or a field that they went through and came through to shoot us. According to Tameris, there were three men and two of them were shooting. "I heard two—one of the guns—both of the guns was sounding off at different times, different sounds. One was louder than the other, one was shooting faster than the other, so I picked that up and I never forgot it." Asked if he recognized the shooters, Tameris said, "I didn't see face because it was dark but I seen shape, figure. I know his run. I know how he walk. I know how big he is." Asked who he was describing, Tameris identified Bradley. "Been around him for three-plus years so picking up tricks like that is not very hard."

{¶ 19} Tameris further testified that he recognized Bradley as one of the shooters, "Not by face, because like I said before, I've been around [Bradley] for

years so the way he run, the way he walk, height, size, all of that, it's memorable." However, when interviewed by the detectives after he was released from the hospital, Tameris did not identify Bradley as one of the shooters. Tameris testified that he was shot in the right leg below his knee, and Benny was shot in the chest.

{¶ 20} Moesha Strozier testified that she is Beniqua's cousin, and she was part of the group that went to Bradley's on April 3, 2018, to fight several females that were related to or friends with Bradley. She was also part of the Cromitys group that went back to Bradley's on April 4, 2018, to fight again. According to Moesha, "We pull up to the street, we got out. A white van skirted [sic], tried to hit us. We started walking towards it telling her to get out the car. Benny Cromity, my cousin, turned around and said, There it go, the people, and we turned around. We had exchanged words and before I know it they got to shooting and we all scattered."

{¶ 21} Asked who was shooting, Moesha answered, "It was Kevin Bradley and Terrance Bradley." Moesha testified that she saw three people "[a]t the end of the street by the field" shooting, although she could not identify the third person. Benny and Tameris both were shot, and Moesha rode in Beniqua's car with them to the hospital. Moesha spoke with the police that night and identified Bradley and his brother Terrance as the shooters. However, Moesha told the police that there were four people shooting.

{¶ 22} Cleveland Police Officer Nicholas Lombardi ("Officer Lombardi") testified that he responded to a call at the Cleveland Clinic at 9:14 p.m. on April 4, 2018, about a person who was brought into the hospital after suffering a gunshot wound. Officer Lombardi interviewed Beniqua, Moesha, and another witness Dionne Watson. From these interviews, Officer Lombardi determined that Bradley and an individual named Blade[] were suspects in the shooting. Officer Lombardi also

observed Beniqua's car parked at the Cleveland Clinic with a bullet hole in the windshield.

{¶ 23} Cleveland Police Detective Raymond Diaz ("Det. Diaz") testified that he investigated the April 4, 2018 homicide at issue in this case. According to Det. Diaz, after interviewing witnesses on the night of April 4, 2018, Bradley and his brother Terrance, were identified as suspects in the shooting that killed Benny and injured Tameris.

{¶ 24} On April 5, 2018, the day after the shooting, Det. Diaz went to the crime scene to look for spent cartridge casings, when "gunshots were fired from the parking lot of 9216 Kenmore," which is Bradley's apartment complex. Det. Diaz saw two people shooting and running from the scene. "We chase them through some yards, one of them being in an area where * * * one of the guns were [sic] recovered where that garbage area was and they did get away from us. Then we returned back to 9216 Kenmore."

{¶ 25} Det. Diaz determined that the shots were fired at Bradley's residence and recovered several cartridge casings from the parking lot. The police got consent to search the apartment, and Bradley was in the kitchen near the table. There were two guns on the kitchen table—a Smith & Wesson 9 mm and a Taurus 9 mm. Bradley admitted the guns were his and that he fired them, explaining that he was defending his home from the shooting that just happened that morning. The police collected the evidence and brought Bradley to the homicide unit to question him about the shooting the night before.

{¶ 26} Bradley initially told the police that he was home and stayed inside his apartment all night on April 4, 2018. After being told that the police had video footage of the shooting from a neighbor's security camera, Bradley stated that he was outside during the shooting, but he was not one of the shooters. Det. Diaz testified that the video the police recovered from the neighbor showed a white van driving, then backing up on the street near the field.

The video also showed the Cromitys arriving to the area in Beniqua's car. The video does not show the shooting or the shooters.

{¶ 27} Det. Diaz further testified that 18 spent casings were recovered from Bradley's apartment complex's parking lot on April 5, 2018, and one bullet was recovered from the windshield of Beniqua's car while it was parked at the Cleveland Clinic on the night of April 4, 2018. Det. Diaz testified that no casings were recovered from the scene of the April 4, 2018 shooting in the field. In other words, the only physical evidence recovered on the night of the incident was a bullet lodged in the windshield of Beniqua's car. All cartridge casings that were recovered were found in the parking lot of Bradley's apartment complex right after shots were fired on the morning of April 5, 2018.

{¶ 28} Det. Diaz testified that one of the shooters during the April 5, 2018 incident was identified as Beniqua's stepbrother. Bradley was not charged with any offenses regarding the April 5, 2018 shooting, and according to Det. Diaz, Bradley was a victim of that shooting.

{¶ 29} Cleveland Police Officer Darryl Johnson testified that three firearms were found at 9216 Kenmore, which is Bradley's apartment, on April 5, 2018: a Smith & Wesson 9 mm pistol; a Taurus 9 mm pistol; and a SCCY 9 mm pistol.

{¶ 30} The 18 cartridge cases that were recovered from the parking lot on April 5, 2018, the day after the incident at issue, were tested, and the forensic firearms examiner testified that nine were fired from a Smith & Wesson 9 mm pistol, and nine were fired from a SCCY 9 mm pistol. One additional damaged shell that was recovered from the windshield of Beniqua's car was also examined, and it was inconclusive from which gun this bullet was fired, although the Taurus 9mm pistol could not be ruled out.

{¶ 31} The forensic scientist who examined the trace evidence in this case testified that she analyzed a gunshot residue test performed on Bradley's hands on April 5, 2018. Bradley's hands tested positive for gunshot residue, and the examiner testified that Bradley "either fired a weapon, [was] in close proximity to a weapon when it was fired, or * * * may have touched an item that already had gunshot residue on it."

*Analysis*

{¶ 32} Bradley argues on appeal that no witnesses testified that he had a gun during the incident at issue and no firearms or shell casings were recovered from the crime scene. Bradley further argues that there was no evidence that he "undertook some action [sic] verbal or nonverbal gesture which could be considered threatening to the victim," thus implying that he had a gun. Therefore, according to Bradley, there was insufficient evidence to convict him of any of the charges, which are all based on the possession or use of a firearm. In the alternative, Bradley argues that his convictions were against the manifest weight of the evidence for the same reason. We address his assigned errors together.

{¶ 33} Upon review, we find that three witnesses testified that Bradley was one of the shooters, and although it is unknown who fired what shots, Benny was fatally shot in the chest, and Tameris was shot in the leg. Bradley is correct in stating that no bullet casings or guns were recovered from the scene of the April 4, 2018 shootings. In fact, all 18 bullet casings that were recovered were found the next day in the parking lot of the apartment complex immediately after the second shooting that morning. These casings were fired from the guns recovered from Bradley's kitchen on April 5, 2018. One damaged bullet was recovered on April 4, 2018, and it was found lodged in the windshield of Beniqua's car. It could not be determined what gun fired that bullet. Furthermore, no bullets were recovered from Benny's body or Tameris's leg.

33

{¶ 34} However, lack of physical evidence does not mean that the evidence the state did present was insufficient to convict a defendant of the offenses with which he or she was charged. *See State v. Lundy*, 8th Dist. Cuyahoga No. 90229, 2008-Ohio-3359, ¶ 12 ("The state may use either direct or circumstantial evidence to prove the essential elements of an offense. * * * Simply because the state did not present physical evidence showing that [the defendant] spat on the officers does not mean that the record contains insufficient evidence to support his conviction or that his conviction is against the manifest weight of the evidence"). Furthermore, witness testimony alone is sufficient to convict someone of a crime. *See State v. Rudd*, 8th Dist. Cuyahoga No. 102754, 2016-Ohio-106, ¶ 37 ("eyewitness identification alone is sufficient to support a conviction — even where discrepancies exist — so long as a reasonable juror could find the eyewitness testimony to be credible").

{¶ 35} Accordingly, we find sufficient evidence to support Bradley's convictions, and his first assigned error is overruled.

{¶ 36} Turning to the manifest weight of the evidence, we find that this case comes down to witness credibility. The physical evidence presented tends to show that Bradley fired at least one of the guns found in his kitchen on the morning of April 5, 2018. The casings recovered were linked to these guns, he tested positive for gunshot residue on April 5, 2018, and he admitted to firing a weapon to defend his home from the shots fired from the parking lot of his apartment complex.

{¶ 37} Of course, Bradley's convictions do not stem from the April 5, 2018 shooting. Bradley was convicted of offenses that took place on April 4, 2018. Three witnesses testified that Bradley was one of the shooters. Two of these witnesses, however, did not identify Bradley to the police when they were questioned, claiming that it was too dark to see

faces. Beniqua and Tameris both testified that they knew it was Bradley by his size and body shape. Beniqua testified that she did not identify Bradley at the time because she wanted revenge. Tameris did not testify as to why he failed to identify Bradley as one of the shooters when he spoke with the police after the incident.

{¶ 38} One witness to the shooting, Moesha Strozier, identified Bradley to the police as one of the men she saw in the field shooting at the Cromitys on the night in question. Det. Diaz testified that Bradley and his brother Terrance were identified as suspects in this shooting on the same night the incident took place. A relative of the Cromitys shot at Bradley's apartment the morning after the incident took place. There is myriad evidence that the Cromitys and Bradley, along with his family and friends, engaged in two fights the day before the incident took place.

{¶ 39} The Ohio Supreme Court held that it is

> well-settled under Ohio law that a defendant may be convicted solely on the basis of circumstantial evidence. "* * * [P]roof of guilty may be made by circumstantial evidence as well as by real evidence and direct or testimonial evidence, or any combination of these three classes of evidence. All three classes have equal probative value, and circumstantial evidence has no less value than the others." "Circumstantial evidence is not less probative than direct evidence, and, in some instances, is even more reliable."

(Citations omitted.) *State v. Nicely*, 39 Ohio St.3d 147, 151, 529 N.E.2d 1236 (1988).

{¶ 40} "Circumstantial evidence is the proof of facts or circumstances by direct evidence from which a jury may reasonabl[y] infer other related or connected facts which naturally and logically follow,

according to the common experience of man." *State v. Beynum*, 8th Dist. Cuyahoga No. 69206, 1996 WL 273777, 1996 Ohio App. LEXIS 2143 (May 23, 1996), citing former Ohio Jury Instructions CR Section 5.10.

{¶ 41} The testimonial and circumstantial evidence in the case at hand, along with the law regarding complicity, supports a jury finding that Bradley either shot at the Cromitys, or aided and abetted the shooters, on April 4, 2018. Therefore, the jury did not lose its way in convicting Bradley of felonious assault and the associated firearm specifications, and Bradley's second assigned error is overruled.

*Bradley*, 2020 WL 3467722, at *1–7.

The Ohio court of appeals applied the *Jackson* sufficiency standard and Bradley has not shown that the court's decision is unreasonable. Bradley points out the conflicting statements Beniqua made about whether she could identify the shooter, Doc. 13, at 28–29, but the jury heard about those conflicting statements. *Bradley*, 2020 WL 3467722, at *3. Bradley argues that Beniqua testified that she had threatened to "set [Bradley] up for a crime," Doc. 13, at 29, but the jury heard about that, too. Doc. 10-2, at 69–70. Bradley points out that no shell casings or projectiles from Benny's body were recovered, Doc. 13, at 30, which the jury also heard. *Bradley*, 2020 WL 3467722, at *5; Doc. 10-2, at 140; *see Brown*, 567 F.3d at 205 (a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the [fact-finder]").

Bradley reiterates his "concern[]" that he was convicted of felonious assault causing serious harm to Benny and Tameris but not the causing-

36

serious-harm portion of discharging a firearm upon or over a public road. Doc. 3, at 31–32, 35. But as explained above, those findings aren't inconsistent. And even if they were, Ohio law permits inconsistent verdicts. *Amey*, 120 N.E.3d at 509. Bradley complains that there was insufficient evidence showing that he caused harm to Benny and highlights the fact that Benny "suffered only a single gunshot wound, and no other injuries or harm." Doc. 13, at 33. But that single gunshot wound killed Benny, and eyewitness accounts and circumstantial evidence is sufficient to support a finding that Bradley fired that shot. *Johnson*, 200 F.3d at 992. Bradley points out that he was found not guilty of murdering Benny, Doc. 13, at 33, but murder includes an intent to kill element that felonious assault does not. *See, e.g.*, Ohio Rev. Code § 2903.02(A) (murder); Ohio Rev. Code § 2903.11 (felonious assault).

Finally, Bradley argues that the other victims in the case "never suffered any physical harm whatsoever." Doc. 13, at 36, 38. But as to those victims, Bradley was convicted of felonious assault under Ohio Revised Code § 2903.11(A)(2), which concerns "[c]aus[ing] or attempt[ing] to cause physical harm to another." Doc. 9-1, at 7–8, 12. Circumstantial evidence was presented at trial that would permit a jury to find that that Bradley fired shots at those victims attempting to cause physical harm to them. Bradley has not shown that the Ohio court of appeals' decision is unreasonable, and Ground two fails on the merits.

3.    *Ground three is waived*

In Ground three, Bradley argues that his 11-year sentence is "excessive, harsh, contrary to the jury's additional findings, not supported by the record, and contrary to law." Doc. 1, at 8. The Warden argues that Ground three is procedurally defaulted because Bradley should have, but didn't, raise this claim on direct appeal; ineffective assistance of appellate counsel cannot serve as cause to excuse the procedural default because any such claim fails on the merits; and that, in any event, Ground three alleges a state-law violation that is not cognizable on federal habeas review. Doc. 9, at 12–14, 32–34. In his traverse, Bradley concedes the Warden's arguments and "hereby waives the argument of such issues." Doc. 10, at 39.

**Conclusion**

For the reasons set forth above, I recommend that Bradley's Petition be denied.

Dated: June 7, 2023

          */s/ James E. Grimes Jr.*
          James E. Grimes Jr.
          U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019).